IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLACKAMAS COUNTY                                          CV. 07-780-PK

                                    Plaintiff,           FINDINGS AND
                                                         RECOMMENDATION

v.

MIDWEST EMPLOYERS CASUALTY
COMPANY

                                    Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff Clackamas County filed this suit against defendant Midwest Employers Casualty

Company for breach of contract and declaratory judgment.  Clackamas County alleges that

Midwest Employers wrongfully denied coverage under the excess employer's liability section of

its insurance policy with Clackamas County.  This court has subject matter jurisdiction under 28

U.S.C. § 1332.  Clackamas County's Motion for Summary Judgment (#39) is now before the

court.[1]  Additionally, although Midwest Employers has not filed a cross-motion for summary

_____

[1]  I granted Clackamas County's motion to file a late reply brief over Midwest Employers'

FINDINGS AND RECOMMENDATION – Page 1

judgment, it asks the court to enter summary judgment in its favor.[2]  For the reasons set forth

below, Clackamas County's Motion for Summary Judgment (#39) should be granted in part and

denied in part.  Midwest Employers' request for entry of summary judgment in its favor should

be denied because the County's motion does not dispose of all the issues in this case.

## BACKGROUND

### I.    The Terms of the Policy

In July 2001, Clackamas County entered into an insurance contract with Midwest

Employers Casualty Company.  (Denley Decl. # 51, Ex. 1 at 1.)  The policy covered a two-year

term.  *Id.* at 5.  The policy contains both workers compensation and employers liability coverage.

Under both coverage sections, Clackamas County is responsible for the first $300,000 in liability

for covered claims and Midwest Employers must reimburse Clackamas for liability exceeding

that amount, up to coverage limits.  *Id.*  In its "general" section, the policy defines "State" as

"any state of the United States of America and the District of Columbia."  *Id.* at 1.

The employers liability coverage has a $1 million coverage limit.  *Id.* at 5.  It contains the

following provision:

> How This Part Applies  Part Two applies to loss paid by you for damages
> imposed upon you by the laws of any state shown in Schedule Item 3.  Part Two
> also applies to loss paid by you for damages imposed upon you by the law of any
> other state which is not shown in Schedule Item 4.  DAMAGES MUST RESULT
> FROM BODILY INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE
> SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE
> NAMED IN SCHEDULE ITEM 3.  Bodily injury includes resulting death.

*Id.* at 2.  Oregon is the only state listed in Schedule Item 3.  *Id.* at 5.  Schedule Item 4 reads

---

objection.  I did not, however, rely on the reply brief in reaching my decision.

2  Midwest Employers abandoned its estoppel and failure to state a claim defenses.  It has also
abandoned its unjust enrichment defense because Clackamas waived damages in excess of the
policy limits.

"None." *Id.*

  The employers liability section also clarifies matters related to indemnity, loss and damages. It states, "<u>Our Indemnity</u> We will indemnify you for loss paid by you in excess of your retention." *Id.* at 2. It defines loss as "the amount actually paid by you for damages imposed upon you by law," including the amount paid "in settlement of claims for legal damages." *Id.* The section defines damages as:

1. Damages for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee; and
2. Damages for care and loss of services; and
3. Damages for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; . . .; and
4. Damages because of bodily injury to your employee that arise out of and in the course of employment, claimed against you in a capacity other than as employer.

*Id.* In addition, in part H, under the heading "Exclusions," the employers liability section excludes coverage for obligations "imposed by worker's compensation, occupational disease, unemployment compensation or disability benefits law, or any similar law." *Id.* at 3.

  Finally, an endorsement modifies the employers liability section. *Id.* at 10. The endorsement states that employers liability coverage "shall also apply to loss paid by you because of liability imposed upon you by the Jones Act (46 USC Section 688)." *Id.*

  The workers compensation section of the policy contains the following provision:

<u>How This Part Applies</u>: Part One applies to loss paid by you because of liability imposed upon you by the workers' compensation law of any state named in Schedule Item 3. Part One also applies to loss paid by you because of liability imposed upon you by the workers' compensation law of any other state which is not shown in Schedule Item 4. LIABILTY MUST RESULT FROM BODILY

INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE NAMED IN SCHEDULE ITEM 3.  Bodily injury includes resulting death.

*Id.* at 1.

In addition to the above provisions, the policy also addresses claims processing issues.  Specifically, the policy requires written notice as soon as the insured learns of a claim, award, verdict, action, suit, proceeding or judgment involving a loss exceeding $150,000.  *Id.* at 3.  The policy further states, "Written Notice shall contain complete details of the injury, disease or death.  Providing loss runs does not constitute notice."  *Id.* The policy includes a late reporting penalty, which reduces the amount that Midwest Employers must pay in indemnity.  *Id.* at 1, 2.  A policy endorsement, however, eliminated the policy's late reporting penalty.  *Id.* at 14.

**II.      The Underlying Lawsuit**

In January 2003, Damon Coates, a Clackamas County sheriff's deputy, was shot and seriously injured in the line of duty.  He filed a workers compensation claim.  Midwest Employers covered Clackamas County under the workers compensation portion of the policy.

In October 2003, Coates filed an 42 U.S.C. §1983 action in U.S. District Court for the District of Oregon against Clackamas County, three county commissioners, the Clackamas County Sheriff and the individual responsible for emergency dispatch in the County.  (Denley Decl. Ex. 2.)  A November 2004 amended complaint added as defendants two individuals responsible for implementing emergency dispatch policies and procedures for Clackamas County.  (Denley Decl. Ex. 3.)  Coates sued the individual defendants in their individual and official capacities.  *Id.*

FINDINGS AND RECOMMENDATION – Page 4

Coates alleged that the shooting was the result of violations of his constitutional rights. Specifically, the suit alleged that the defendants were deliberately indifferent to Coates' rights in that they failed to train sheriffs deputies and emergency dispatchers.  The complaint also alleged that the commissioners, sheriff and the individual responsible for emergency dispatch had policymaking authority and had adopted or continued a policy or practice of using defective or insufficient law enforcement communication systems that amounted to deliberate indifference to Coates' constitutional rights.  The complaint also alleged that all of the defendants affirmatively placed Coates in a position of danger in violation of his constitutional rights.

The complaint sought punitive damages in addition to other damages.  The suit did not contain any state law causes of action.  Clackamas County defended and agreed to indemnify its employees named as its co-defendants in the action.

### III.    Midwest Employers' Denial of Coverage

On October 31, 2003 Clackamas County sent an email to Midwest Employers about the suit, stating that Coates  "filed a civil rights suit against Clackamas County."  (McGlone Decl., #42, Ex. K.)  Midwest Employers responded by asking if the civil rights claim had anything to do with the accident and stating that the civil rights case did not change the workers compensation coverage.  *Id.*  Midwest Employers noted in the claims file that Coates had filed a civil rights suit against the County and that Midwest sought more information about the case. (McGlone Decl. Ex. L.)

In November 2004, Clackamas County formally notified Midwest Employers of its intention to seek coverage under the employers liability portion of the insurance policy by sending a letter and a copy of the complaint.  (McGlone Decl. Ex. N.)  Midwest Employers

responded stating that they would need to have the lawsuit reviewed for coverage.  (McGlone

Decl. Ex. O.)  In March 2005, Midwest Employers denied coverage on the ground that the policy

only covered claims under state law and Coates had pursued his suit under federal law.

In September 2005, Clackamas County participated in a settlement conference with

Coates.  Before the conference, Clackamas sent an email to Midwest Employers asking for

settlement authority.  The email referred to the case as "the civil suit that Coates has filed against

the County."  Midwest Employers declined to participate because it had denied coverage.  The

parties agreed to a settle.  The County agreed to pay Coates a $1.5 million lump sum in exchange

for Coates' release of all claims with the exception of his right to workers compensation.

Before finalizing the settlement, Clackamas County sent a letter to Midwest Employers

asking that it reconsider its denial of coverage and approve the settlement.  (McGlone Decl. Ex.

T.)  The letter stated the terms of the settlement and asserted that the policy covered the claims

against Clackamas County's officers and employees because state law required the County to

defend and indemnify those individuals.  *Id.*  Clackamas County, however, did not indicate that

its employees had demanded indemnity, nor did it provide any written proof of that fact.

Midwest Employers responded that it would not assert its right under the policy to approve the

settlement because it saw "no new developments" that would lead it to change its position that

the Coates suit was not covered.  (McGlone Decl. Ex. U.)  The Clackamas County Board of

Commissioners approved and thereby finalized the settlement.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

FINDINGS AND RECOMMENDATION – Page 6

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary

judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth of the

matter and must construe the evidence in the light most favorable to the nonmoving party.

*Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

## DISCUSSION

### I.      Choice of Law

"When a federal court sits in diversity, it must look to the forum state's choice of law

rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir.

2002) (citation omitted). In Oregon, before embarking on a choice of law analysis, a court must

first determine whether the laws of the states having a connection with the controversy are in

conflict on the particular issue. *Lilienthal v. Kaufman*, 239 Or. 1, 5, 395 P.2d 543 (1964). "The

proponent of the law of another forum has the obligation to identify material differences between

the applicable law of Oregon and of the other forum." *Spirit Partners, LP v. Stoel Rives LLP*,

212 Or. App. 295, 301, 157 P.3d 1194 (2007). Here, both parties agree that Oregon law governs

interpretation of the insurance policy at issue. I therefore apply Oregon law.

### II.     Interpretation of the Policy

In Oregon, the interpretation of an insurance contract is a question of law. *Hoffman

Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469-471, 836 P.2d 703 (1992). Moreover,

"[d]espite ordinary rules of contract interpretation, extrinsic evidence of the parties' intent is not

part of the interpretation of an insurance policy." *Emplrs Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 504, 156 P.3d 105 (2007) (citations omitted).

The first rule of contract construction is to "ascertain the intention of the parties" through analysis of the terms, conditions, and definitions in the contract. *Hoffman Constr. Co.*, 313 Or. at 469 (quotation omitted); *see also* Or. Rev. Stat. § 742.016. When parties assert competing plausible interpretations of a term in an insurance policy, the court must engage in a series of analytical steps. *Id.* at 470. If the policy does not define the phrase in question, the court must consider whether the phrase has a plain meaning. *Holloway v. Republic Indemnity Co. of Am.*, 341 Or. 642, 649, 147 P.3d 329 (2006). If, however, the phrase in question has more than one plausible interpretation, the court must then determine whether both interpretations remain reasonable in light of the phrase's particular context and the broader context of the policy as a whole. *Id.* at 650. If that contextual analysis yields two or more reasonable interpretations, then the court should construe the remaining ambiguity against the drafter. *Id.*

Here, the parties dispute whether the policy's employers liability coverage for "losses paid by [the insured] for damages imposed upon you by the laws of any state" excludes losses paid in settlement of an action under 42 U.S.C. § 1983. Clackamas County argues that the policy language allows the insurer to establish territorial limits on its coverage, rather than a limit based on the source of the law giving rise to liability. As support for this argument, Clackamas County points out that the worker's compensation coverage section of the policy specifically states that it applies to losses imposed by "the worker's compensation law of any state," whereas the employers excess liability coverage section does not specify a particular statute.

Clackamas County's argument is unpersuasive. The County overlooks that the policy

defines "State" as "any state of the United States of America and the District of Columbia."

Thus, the phrase "the laws of any state," for the purposes of this policy, refers to state, not federal

laws.  Moreover, the policy as a whole supports this conclusion.  The fact that the comparable

workers' compensation provision specifies state workers compensation statutes suggests that the

similar provision in the employers liability section also limits coverage based on the source of

the law giving rise to liability.

      Clackamas County alternatively argues that, if the employers liability coverage does not

extend to federal claims, the coverage serves no purpose.  Specifically, the County contends that

the employers liability coverage fills the gap left by employee claims that are not covered under

workers compensation.  Under Oregon law, if an employer complies with its statutory duty to

provide workers compensation for an employee, it is not be liable for other claims brought by the

employee for injuries incurred in the course of employment.  Or. Rev. Stat. § 656.018(1)(a).  In

addition, Oregon law immunizes public entities from liability for claims by individuals covered

under workers' compensation.  Or. Rev. Stat. § 30.265(3)(a).  Thus, the County argues, because

Oregon law provides for immunity from additional suits once the County extended workers

compensation, no gap remained for the employers liability coverage to fill if the coverage only

applied to state law claims.

      At the time the parties entered into the contract in July 2001, however, the Oregon

Supreme Court had ruled that, in some circumstances, the workers' compensation exclusive

remedy provision in section 656.018(a)(a) does not apply because it violates the Oregon

Constitution's Remedy Clause.[3]  *See Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 135, 23 P.3d

---

3   The Remedy Clause provides that "every man shall have remedy by due course of law for
    injury done him in his person, property, or reputation."  Or. Const. art. I, § 10.

FINDINGS AND RECOMMENDATION – Page 9

333 (2001) (holding that the exclusive remedy provision of section 656.018 was unconstitutional as applied to a workers' compensation claim that was denied because the worker failed to prove that the work-related incident was the major cause of the injury). Thus, at the time Clackamas County entered into the insurance contract, the employers liability coverage filled a gap, albeit a small gap, even if it did not extend coverage to federal causes of action.

In summary, in light of the fact that the policy defines "state," as "any state of the United States of America and the District of Columbia," Clackamas County has failed to establish that the term "damages imposed upon you by the law of any state" is ambiguous. I therefore construe the employers liability coverage to extend only to actions under state law.

## III.    Application of the Policy to the Underlying Suit

### A.    Burden of Proof

In Oregon, the insured has the burden of proof that it has incurred a covered loss. *Lewis v. Aetna Ins. Co.*, 264 Or. 314, 316, 505 P.2d 914 (1973). "Conversely, the insurer has the burden of proving that the policy excludes coverage." *Emplrs Ins. of Wausau*, 211 Or. App. at 509. Therefore, as an initial matter, I must determine whether the parties' dispute concerns a coverage provision or whether it focuses on an exclusion from coverage.

Oregon law defines an exclusion in an insurance policy as a provision that eliminates coverage that, were it not for the exclusion, would otherwise exist. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 222 Or. App. 453, 472-473,194 P.3d 167 (2008). Coverage provisions, on the other hand, "define the universe of claims that are covered by the policy." *Id.* at 473 (concluding that a requirement that appeared in the policy as part of the definition of an event that would trigger coverage was part of a coverage provision, not an exclusion).

Here, the parties dispute whether settlement of an action under 42 U.S.C. § 1983 constitutes "damages imposed upon you by the laws of any state" as set forth in the employers liability section of the policy. Those words appear under the heading "How This Part Applies" at the start of the employers liability section and thus appear to define the claims covered under that section. Moreover, exclusions are specifically labeled and listed in a separate provision. I therefore conclude that the phrase at issue appears in a coverage provision. As a result, Clackamas County bears the burden of proof that Coates' civil rights suit is covered under the policy.

**B.    Whether an Action Under 42 U.S.C. § 1983 Imposes Damages Under State Law**

       **1.    The State Action Requirement**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Although a federal court may look to state law to aid its analysis, whether an individual qualifies as a state actor for purposes of § 1983 is a question of federal law. *See, e.g., Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 954-955 (9th Cir. 2008) (explaining the test to determine whether or not there was state action sufficient to establish liability for a constitutional tort); *Anderson v. Warner*, 451 F.3d 1063, 1068-1069 (9th Cir. 2006) (same); *see also Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law.")

Here, Clackamas County argues that, because plaintiffs pursuing claims under 42 U.S.C. § 1983 must prove that the defendant acted "under color of state law," the damages imposed in

FINDINGS AND RECOMMENDATION – Page 11

an action under 42 U.S.C. § 1983 are imposed under state law.  I find that argument unpersuasive in light of the foregoing case law.

### 2.    Damages Available Under 42 U.S.C. § 1983

Section 1983 does not specify the damages available to an injured plaintiff in a civil rights suit but instead merely states that the defendant "shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  Where federal law does not provide specific guidance, 42 U.S.C. § 1988 directs "federal courts to follow a three-step process to borrow an appropriate rule." *Burnett v. Grattan*, 468 U.S. 42, 47 (1984).  First, courts look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." *Id.* at 47-48 (quoting 42 U.S.C.  § 1988).  Second, if federal law is "deficient in the provisions necessary to furnish suitable remedies," courts apply state "common law, as modified and changed by the constitution and statutes" of the forum state.  42 U.S.C. § 1988(a).  "A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not inconsistent with the Constitution and laws of the United States." *Burnett*, 468 U.S. at 47 (citation omitted).

"Regardless of the source of the law applied in a particular case, however, it is clear that the ultimate rule adopted under § 1988 is a federal rule responsive to the need whenever a federal right is impaired." *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (citation omitted); *see also Medrano v. Los Angeles,* 973 F.2d 1499, 1505 (9th Cir. 1992) ("Section 1983 is an express federal damages remedy that cannot be expanded by state law"); *Gilbaugh v. Balzer*, No. 99-1576, 2001 U.S. Dist. LEXIS 9864, at *20 (D. Or. June 7, 2001) (declining to borrow Oregon's wrongful death statute's restrictions on available damages because they were inconsistent with §

FINDINGS AND RECOMMENDATION – Page 12

1983).

Here, plaintiff argues that because litigation of claims under § 1983 requires reference to state law, Coates' claim imposed damages under state law and thus is covered under the employers liability section of the policy.  This argument is unpersuasive in light of the fact that federal interests "predominate" such that federal courts decline to apply state law when it is inconsistent with federal law.  Moreover, on at least one occasion, this court has specifically rejected Oregon law as a reference point for the damages available in federal civil rights claim.

### 3.    The County's Duty to Indemnify Under Oregon Law

Oregon law requires that public entities "defend, save harmless and indemnify any of its officers, employees and agents . . . against any tort claim or demand . . . arising out of an alleged act or omission occurring in the performance of duty."  Or. Rev. Stat. § 30.285(1).  In addition, upon a written request from an employee, public bodies must "engage counsel to appear and defend the officer, employee or agent unless after investigation it is determined that the claim or demand does not arise out of an alleged act or omission occurring in the performance of duty." Or. Rev. Stat. § 30.287(1).  In other words, section 30.285(1) "imposes ultimate liability for negligent performance of a public employee's duties on the employer."  *United Pacific Reliance Ins. Co. v. Horace Mann Ins. Co.*, 65 Or. App. 21, 25, 670 P.2d 172 (1983).

Clackamas County argues that it incurred liability for settlement of the Coates claim pursuant to its state law duty to indemnify its employees.  Moreover, the County asserts that such a claim meets the definition of damages set forth in the employers liability section of the policy. That definition includes, "[d]amages for which you are liable to a third party by reason of a claim or suit against you by that third party to recover damages claimed against such third party as a

result of injury to your employee."

I find Clackamas County's argument persuasive.  The employers liability section applies to damages "imposed upon you by the laws of any state."  Section 1983 does not impose *respondeat superior* liability on a municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, Clackamas County was not liable under federal law for the acts of its employees named as defendants in the Coates action but rather had a state law duty to indemnify its employees.  Moreover, the employers liability section defines damages to include liability for claims brought by a third party (here, the employee defendants in the Coates suit) to recover damages claimed against the third party as a result of injury to an employee (here, Coates).  As a result, although the Coates suit proceeded solely under federal law and Midwest Employers properly denied coverage for Coates' claims against Clackamas County, the individual employees' demand that Clackamas County indemnify them constituted a separate, covered claim.

Midwest Employers argues that Clackamas County is not entitled to assert a breach of the policy with regard to the individual employees' indemnity claim because the County did not provide notice of that claim.  Clackamas County, however, reported its duty to indemnify its employees in the letter it sent to Midwest Employers after the parties reached a settlement but before the Board of Commissioners finalized the settlement.  Accordingly, I find that Clackamas County's letter provided notice of a possible indemnity claim arising from the individual employees' liability in the Coates action.

### C.    Allocation of the Settlement Between Covered and Uncovered Claims

Both individuals and municipalities can be liable for claims under § 1983, although

different theories of liability, defenses and damages apply.  An individual may be liable for his or

her personal participation in the alleged constitutional violation but is entitled to assert a

qualified immunity defense.  *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).  Municipalities,

although free from *respondeat superior* liability under § 1983, do not enjoy absolute or qualified

immunity from § 1983 suits.  *Leatherman v. Tarrant County Narcotics Intelligence &*

*Coordination Unit*, 507 U.S. 163, 166 (1993).  A municipality is liable under § 1983 if a

municipal policy or custom caused the deprivation of the plaintiff's constitutional rights.

*Monell*, 436 U.S. at 690-691.  Moreover, individual officers may be liable for punitive damages

under § 1983, *Smith v. Wade*, 461 U.S. 30, 55 (1983), whereas municipalities are immune from

punitive damage awards under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271

(1981).

Here, Coates' suit alleged that both the County and its employees violated his

constitutional rights and sought both general and punitive damages.  Thus, the settlement

included a covered claim, the County's state law duty to indemnify its employees, and an

uncovered claim, the County's municipal liability under 42 U.S.C. § 1983.  The parties in the

Coates action, however, agreed to a lump sum settlement.  I must therefore address whether the

County or Midwest Employers bears the burden of proof to allocate the Coates settlement

between covered and uncovered claims and whether such an allocation is possible in this case.

### 1.    Burden of Proof

The Oregon courts have apparently not addressed which party bears the burden of proof

to apportion a settlement that encompassed claims covered by an insurance policy and non-

covered claims.  As a general matter, however, plaintiffs bear the burden to prove damages in a

breach of contract cause of action.  *See Davis v. Wilson*, 261 Or. 137, 147, 493 P.2d 31 (1972)

(plaintiffs in action for breach of a lease agreement failed to prove damages); *Bennett Veneer*

*Factors, Inc. v. Tomco, Inc.*, 256 Or. 547, 551, 474 P.2d 519 (1970) (eliminating trial court award

of $750 to the plaintiff as reimbursement for expenses prior to the cancellation of the contract

where no evidence supported an award of that amount, "or any other specific sum").

Moreover, courts generally place the burden on the insured to allocate settlement between

covered and non-covered claims unless the conduct of the parties justifies placing the burden on

the insurer.  *See, e.g., Twin City Fire Ins. Co. v. Amerisure Ins. Co.*, No. 03-0264, 2008 WL

2678434, at *5 n.8 (S.D. Ala. July 2, 2008) (citing Alabama law placing the burden on the

insured to obtain a special verdict to show that the insured incurred liability for covered claims);

*Voest Alpine Industries, Inc. v. Zurich American Ins. Co.*, No. 02-1605, 2007 WL 1175750, at *3

(W.D. Pa. Apr. 20, 2007) (stating that the insured bears the burden of apportioning the settlement

payment between covered and non-covered claims but noting the ultimate allocation rests with

the court's equitable discretion); *Raychem Corp. v. Federal Ins. Co.,* 853 F. Supp. 1170, 1176

(N.D. Cal. 1994) (holding the insured bears the *prima facie* burden to produce evidence that the

settlement related to covered claims); *John Hancock Healthplan v. Lexington Ins. Co.*, No. 88-

2308, 1990 U.S. Dist. LEXIS 2450, at *8 (E.D. Pa. Mar. 6, 1990) (concluding that Pennsylvania

courts would most likely place the burden on the insured to prove that a portion of the settlement

applied to covered claims and noting that rule "comports with the general notion that the plaintiff

has the burden of proving its case").  *But see Pepsico v. Continental Casualty Co.*, 640 F. Supp.

656, 662 (S.D.N.Y. 1986) (insured's good faith settlement of underlying litigation creates a

presumption that the policy covers the entire settlement).

FINDINGS AND RECOMMENDATION – Page 16

Courts place the burden on the insurer to allocate settlement between covered and non-covered claims where the insurer behaved wrongfully.  *See MW Builders, Inc. v. Safeco Ins. Co. of* Amer., No. 02-1578, 2009 WL 995039, at *6 (D. Or. Apr. 9. 2009) (finding "clear authority for concluding that under some circumstances it is appropriate that insurers shoulder . . . responsibility" for allocating the settlement between covered and non-covered claims). Specifically, the insurer may bear the burden where the circumstances of the underlying action should have compelled the insurer to seek allocation, or apprise the insured of the need for allocation.  *See, e.g., id.* at *5-6 (insurer bore the burden of proof on allocation where it defended the insured in an arbitration but neglected to seek allocation of damages between covered and non-covered claims); *Premier Parks, Inc v. TIG Ins. Co.*, No. 04-126, 2006 WL 2709235, at *13 (Del. Sup. Ct. Sept. 21, 2006) (insurer bore the burden where it made no attempt to conduct an investigation of the claim, had a representative attend the mediation, and failed to apprise the insured of the need for apportionment).  In addition, some courts have held that the burden is on the insurer if the insurer breached its duty to defend.  *See, e.g., Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.,* 76 Haw. 277, 297, 875 P.2d 894 (1994) ("Where the insured seeks indemnification after the insurer has breached its duty to defend, (1) coverage is rebuttably presumed, (2) the insurer bears the burden of proof to negate coverage, and (3) where relevant, the insurer carries its traditional burden of proof that an exclusionary clause applies."); *see also Bellefonte Ins. Co. v. Wayson*, 489 F. Supp. 58, 60 (D. Alaska 1980); *Marston v. Merchants Mut. Ins. Co.*, 319 A.2d 111, 114, 1974 Me. LEXIS 384 (Me. 1974); *see also Northwest Pump & Equip. Co. v. American States Ins. Co.,* 144 Or. App. 222, 227 (1996).(holding an insurer's breach of the duty to defend gives rise to a duty to indemnify if the underlying claim was covered but

not addressing the burden of proof).

Here, Midwest Employers was not compelled to seek allocation of the Coates settlement or to apprise Clackamas County of the need to do so. Clackamas County knew of the possibility that the employers liability policy would cover only a portion of the settlement but proceeded to reach a tentative, global settlement before it informed Midwest Employers of that fact. Moreover, Midwest Employers was not dilatory in its investigation of the indemnity claim because Clackamas County did not provide notice of it until shortly before the Board of Commissioners finalized the settlement.

In addition, Midwest Employers' refusal to defend Clackamas County in the Coates case does not justify shifting the burden of proof. The duty to defend arises from the facts alleged in the complaint. *See Schnitzer Investment Corp.*, 197 Or. App. 147, 155, 104 P.3d 1162 (2005) *aff'd*, 341 Or. 128, 137 P.3d 1282 (2006) (citation omitted). Midwest Employers had no duty to defend the parties in the Coates suit because the suit involved only federal law claims.

Finally, Clackamas has not presented any evidence that the Coates settlement was reasonable or in good faith. Rather, Clackamas County negotiated a global settlement of all the claims in the Coates suit before it provided notice to Midwest Employers that the County had a duty to indemnify the individual employee defendants. *See Bob Useldinger & Sons v. Hangsleben,* 505 N.W.2d 323, 331, 1993 Minn. LEXIS 600 (Minn. 1993) ("Without knowing what each defendant has agreed to pay as its share, there is no way of judging the reasonableness or prudence of the agreement from the standpoint of each defendant.") In sum, I find no reason to relieve Clackamas County of its burden of proof to allocate the Coates settlement between covered and non-covered claims.

FINDINGS AND RECOMMENDATION – Page 18

2.        **Methods of Allocation**

Courts have taken a variety of approaches to allocate a settlement between claims covered under an insurance policy and claims not covered.  Some courts apply the "larger settlement" rule, which requires that the insurer pay the settlement up to the extent that the potential liability from the non-covered claim increased the settlement amount.  *See, e.g., Caterpillar v. Great Am. Ins. Co.*, 864 F. Supp. 849, 857 (C.D. Ill. 1994).  Other courts allocate according to the relative risk of exposure from covered and uncovered claims.  *See, e.g., Pepsico*, 640 F. Supp. at 662.  In *Twin City Fire Ins. Co.*, the insured met its burden of proof to show that settlement involved the covered negligence claim and excluded the non-covered wanton misconduct claim where the evidence showed that the mediation focused exclusively on the covered claim and the settlement agreement stated that no portion was allocated to punitive damages.  2008 WL 2678434, at *6-7.  Oregon courts have similarly employed a fact-based inquiry to determine whether an insurer has a duty to indemnify.  *See Schnitzer Investment Corp.*, 197 Or. App. at 160-161 (where coverage existed for damages the insured incurred due to groundwater contamination, but not for cost of cleaning the insured's own property, insurer had no duty to indemnify because the evidence showed the insured did not incur any groundwater contamination costs).

Here, Clackamas County has not presented any evidence to meet its burden of proof to allocate the Coates settlement between the covered indemnity claim involving the individual employees and the non-covered claim against the County.  I remain skeptical that the County can meet its burden, in light of the fact that the settlement agreement itself makes no hint at allocation.  I note, however, that during oral argument Clackamas County requested the

opportunity to address the apportionment issue.  The court therefore should deny Clackamas

County's motion for summary judgment but should refrain from entering a judgment in favor of

Midwest Employers because apportionment remains unresolved.

## IV.    Unclean Hands

In Oregon, "a party's unclean hands will preclude him from obtaining equitable relief

only when the wrongdoing is related to the transaction giving rise to the claim.  *North Pacific

Lumber Co. v. Oliver*, 286 Or. 639, 653, 596 P.2d 931 (1979).  The improper conduct must have

"sufficiently affected the equitable relations between the parties to justify the trial court's refusal

to grant relief."  *Id.* at 559.  Moreover, the party "complaining that his opponent is in court with

unclean hands . . .  must show that he himself has been injured by such conduct to justify the

application of the principle to the case."  *Martin v. Allbritton*, 124 Or. App. 345, 352, 862 P.2d

569 (1993).

Here, Midwest Employers argues that unclean hands applies because the Coates suit

alleged that Clackamas County and its employees acted with malice.  Midwest Employers,

however, has not explained how the alleged malice against Coates caused Midwest any harm.

The court should therefore grant Clackamas County's motion for summary judgment on Midwest

Employers' unclean hands defense.

## CONCLUSION

The court should grant in part and deny in part Clackamas County's Motion for Summary

Judgment (#39).  The court should grant Clackamas County's motion for summary judgment on

Midwest Employer's unclean hands affirmative defense.  The remainder of Clackamas County's

motion for summary judgment should be denied.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 22, 2009.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 8th day of October, 2009.

　　　　　　　　　　　　　　　　 /s/ Paul Papak _____
　　　　　　　　　　　　　　　　Honorable Paul Papak
　　　　　　　　　　　　　　　　United States Magistrate Judge

FINDINGS AND RECOMMENDATION – Page 21