FILED

DEC 2 2 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLACKAMAS COUNTY,

      Plaintiff,

                                 CV 07-780-PK

                                 OPINION AND
v.                                 ORDER

MIDWEST EMPLOYERS CASUALTY
COMPANY,

      Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Clackamas County filed this action against defendant Midwest Employers

Casualty Company ("Midwest Employers") in the Clackamas County Circuit Court on April 20,

2007. Midwest Employers removed the County's action to this court on May 25, 2007, on the

basis of diversity. The County moved for summary judgment on July 22, 2009, and, on

December 14, 2009, Judge Brown adopted my Findings and Recommendation, granting the

County's motion as to one of Midwest Employers' affirmative defenses only, and otherwise

denying the motion. Both parties subsequently consented to magistrate judge jurisdiction, on

January 15, 2010.

Page 1 - OPINION AND ORDER

Now before the court are Midwest Employers' motion (#91) for summary judgment and Midwest Employers' motion (#104) to strike. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, Midwest Employers' motion to strike and motion for summary judgment are each granted, and the County's claims are dismissed with prejudice.

## LEGAL STANDARDS

### I.    Motion to Strike

It is well established that the district courts enjoy an inherent power to manage and control their own dockets. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (affirming "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). It is clear that this inherent power includes the authority to sanction procedural impropriety in an appropriate manner. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect" of the courts' inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process;" holding that because "outright dismissal of a lawsuit . . . is within the court's discretion," in consequence less severe sanctions are "undoubtedly within a court's inherent power as well"); *Atchison, T. & S.F. Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("well established that district courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion") (citations, internal quotation marks omitted); *see also Lamos v. Astrue*, 2008 U.S. App. LEXIS 9143 (9th Cir. 2008) (unpublished disposition) (affirming inherent power of the courts to strike documents other than pleadings from the docket); *Centillium Communs., Inc. v. Atl. Mut. Ins. Co.*, 2008 U.S. Dist.

Page 2 - OPINION AND ORDER

LEXIS 20719 (D. Cal. 2008) (striking a procedurally improper motion pursuant to the court's inherent power).

## II.    Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

## I.    The Parties' Insurance Policy

The County and Midwestern Employers entered into a contract for the provision of workers compensation and employers' liability insurance (the "Policy") in July 2001. The Policy had an effective period of two years. In connection with its provisions for employers' liability insurance coverage, the Policy covered losses paid by the County for "damages" imposed on it by the laws of any state of the United States of America or of the District of Columbia. For purposes of the Policy's employers' liability section, "damages" was defined to include:

Page 3 - OPINION AND ORDER

1.   Damages for which you are liable to a third party by reason of a claim or
     suit against you by that third party to recover the damages claimed against
     such third party as a result of injury to your employee; and
2.   Damages for care and loss of services; and
3.   Damages for consequential bodily injury to a spouse, child, parent, brother
     or sister of the injured employee; . . .; and
4.   Damages because of bodily injury to your employee that arise out of and in
     the course of employment, claimed against you in a capacity other than as
     employer.

Under both its workers' compensation coverage section and its employers' liability

coverage section, the Policy provided that the County was responsible for the first $300,000 in

liability in connection with any covered claim, and that Midwest Employers was obliged to

indemnify the County for liability in excess of $300,000 in connection with covered claims up to

the coverage limit of $1,000,000.

## II.    Coates' Underlying Action against Clackamas County

In January 2003, Damon Coates, a Clackamas County sheriff's deputy, was shot and

seriously injured in the line of duty.  He subsequently filed a workers' compensation claim, in

connection with which Midwest Employers agreed to provide insurance coverage to the County

under the Policy.

In October 2003, Coates filed an action in the U.S. District Court for the District of

Oregon, against the County, three County commissioners, the County Sheriff and the director of

the County Department of Communications, alleging each defendant's liability under 42 U.S.C. §

1983.  In November 2004, Coates amended his complaint to add two additional defendants, each

an individual County employee responsible for implementing emergency dispatch policies and

procedures for the County.  Coates alleged his claims against the individual County employee

defendants in both their individual and official capacities.

Page 4 - OPINION AND ORDER

### III.    The Parties' Coverage Dispute

On October 31, 2003, the County notified Midwest Employers that Coates' action had been filed. Midwest Employers responded with an inquiry as to whether Coates' civil rights action was related in any way to the incident in which he had been shot in the line of duty, in connection with which Midwest Employers was already providing workers compensation coverage in accordance with the terms of the workers compensation section of the Policy. In November 2004, the County formally notified Midwest Employers of its intention to seek employers' liability coverage under the Policy in connection with the Coates action, enclosing a copy of Coates' complaint. In March 2005, Midwest Employers formally denied coverage for any losses paid by the County as damages in connection with the Coates action, on the grounds that Coates' claims sounded in federal rather than state law. The County therefore undertook its own defense in the Coates action.

On August 31, 2005, the County requested from Midwest Employers, but did not receive, authority to settle Coates' workers' compensation claim for up to $2,157,0000. Later, on September 15, 2005, the County participated in settlement discussions with Coates, apparently with the intention of seeking a "global" settlement of all of Coates' claims, including his workers' compensation claim. It appears that, prior to the settlement conference, Midwest Employers authorized the County to settle the workers' compensation claim in an amount up to $200,000, but declined to participate in negotiating settlement of the Section 1983 claims. During settlement discussions, a representative of the County called Midwest Employers from the settlement negotiations to assert the County's intention to seek employers' liability coverage in connection with Coates' Section 1983 claims. It appears that Midwest Employers' representative

indicated that Midwest Employers would review its coverage decision on the Section 1983

claims. The settlement negotiation concluded with the County tentatively agreeing to pay Coates

$1,500,000 in global settlement of his Section 1983 claims (but not his workers' compensation

claim) against all defendants, subject to approval by the Clackamas County Board of

Commissioners.

On September 20, 2005, before the County's tentative settlement agreement with Coates

was finalized, the County again requested that Midwest Employers reconsider its coverage denial

and agree to indemnify the County in connection with the settlement agreement. The County's

letter to Midwest Employers for the first time asserted that the County was under a state-law

obligation to indemnify and defend the individual County employees in connection with Coates'

claims against them, and for the first time asserted a right to coverage under the Policy in

connection with that state-law obligation. On September 27, 2005, Midwest Employers

responded that it would not modify its previous adverse coverage decision, and declined to

exercise any right to approve or disapprove the global Coates settlement.

On September 30, 2005, counsel for the County provided the County Board of

Commissioners with a detailed written assessment of the Coates claims and of the proposed

global settlement. According to counsel's assessment, the majority of Coates' economic damages

would be paid by the County's excess workers' compensation insurance carrier, so that the

potential losses in connection with the Section 1983 action would be largely limited to non-

economic "pain and suffering" damages and punitive damages, although some wage and benefits

losses would not be covered by workers' compensation and therefore would also be at issue.

Although counsel's assessment was that "the likelihood of a defense verdict is high," counsel

Page 6 - OPINION AND ORDER

nevertheless recommended that the Board accept the proposed settlement because the potential liability in the event of a plaintiff's verdict was effectively uncapped.

Counsel analyzed the claims at issue in the Coates action in three separate categories: claims against the individual County employee dispatcher defendants, premised on exposing Coates to a dangerous situation with deliberate indifference to his safety, claims against the County, County Commissioners, County Sheriff and Communications Director defendants, premised on knowingly operating an ineffective law enforcement communications system, and claims against the County, County Commissioners, County Sheriff and Communications Director defendants, premised on providing inadequate training to County dispatcher employees. With respect to the Section 1983 claims against the individual County employee dispatcher defendants, counsel flatly opined that the individual defendants were "entitled to qualified immunity," and that, in any event, the evidence established that they were "not deliberately indifferent to plaintiff's safety" and therefore could not be subject to liability under Section 1983. With respect to the claims against the County, Commissioners, Sheriff, and Director defendants premised on knowingly operating a defective communications system, counsel opined that for Coates to prevail on those claims he would need to establish the County's knowledge of the inadequacy and failure to take steps to rectify it, and further opined that the evidence established that the County was actively working to improve the system at the time the shooting occurred, so that no liability could attach. With respect to the claims against the County, Commissioners, Sheriff, and Director defendants premised on inadequate training, counsel opined that the claims were likely to fail because of the absence of evidence that dispatcher training was inadequate. Counsel did not suggest that the claims against the County presented any different risk of loss

Page 7 - OPINION AND ORDER

from the claims against the County defendants, nor did counsel raise the issue of whether provision should be made for allocation of the global settlement payment among the claims or among the defendants.

On October 6, 2005, County counsel provided the County Commissioners with a second written recommendation that the Board accept the proposed settlement. Again, counsel suggested neither that the recommendation reflected any differential assessment of the risk posed by the claims against the County as opposed to the claims against the County employee defendants nor that provision should be made for allocation of the global settlement payment.

The County finalized its settlement agreement with Coates on November 10, 2005. The finalized settlement agreement did not provide for any allocation of the County's settlement payment among Coates' various claims or among the various defendants.

## IV.    Relevant Procedural History

The County filed this action against Midwest Employers in the Clackamas County Circuit Court on April 20, 2007, alleging Midwest Employers' liability in the amount of $1,755,233.99 for breach of the parties' insurance contract, and seeking the court's declaration that the Policy provided coverage for Coates' underlying claims against the County. Midwest Employers removed the action to this court on May 25, 2007. On June 1, 2007, Midwest Employers answered Clackamas County's complaint, alleging affirmative defenses of estoppel, failure to state a claim, unclean hands, unjust enrichment, laches, and applicable insurance policy coverage exclusions.

On July 22, 2009, the County moved for summary judgment on its claims, and in the alternative requested partial summary judgment as to some of its claims and Midwest Employers'

Page 8 - OPINION AND ORDER

affirmative defenses.  In its briefing in support of its motion, the County waived its request for

damages in excess of the insurance policy's coverage limit of $1 million.  In consequence,

Midwest Employers withdrew its unjust enrichment defense.  In addition, Midwest Employers

withdrew its estoppel and failure to state a claim defenses.  In opposition to the County's motion,

Midwest Employers informally requested that the court enter summary judgment in its own

favor.  The crux of the parties' dispute lay in the interpretation of the Policy provision providing

coverage for "losses paid by [Clackamas County] for damages imposed upon [Clackamas

County] by the laws of any state [of the United States or the District of Columbia]. . . ."  Midwest

Employers took the position that this provision foreclosed the possibility of coverage for losses

paid by the County in settlement of a federal claim brought against it in federal court, whereas

the County took a contrary position.

 On October 8, 2009, I issued a Findings and Recommendation that the County's motion

for partial summary judgment as to Midwest Employers' unclean hands defense be granted and

that the County's motion be otherwise denied.  I specifically recommended that the court hold

that the Policy provided coverage only in connection with claims brought under state law, and

not in connection with claims brought under federal law.  I further found that the County bore the

burden of proof as to whether the Policy provided coverage in connection with Coates'

underlying claims, and that damages imposed under Section 1983 constituted damages imposed

under federal rather than state law.

 However, I further found that the County's duty to indemnify the individual County

employee defendants arose under state law rather than under federal law, and that, in

consequence, any payment by the County in response to demand for indemnification by the

Page 9 - OPINION AND ORDER

individual County employee defendants would be covered under the Policy. I found that the

County had notified Midwest Employers of the possibility of such indemnity claims, and

concluded that Midwest Employers was obliged under the Policy to cover those portions of the

global Coates settlement, if any, that had reasonably been allocated to the claims asserted against

the individual county employee defendants. I therefore recommended that Midwest Employers'

informal request for summary judgment be denied. In connection with the allocation issue, I

found that the County bore the burden of proof to establish what portion of the Coates settlement

had been allocated to settlement of the individual County employee defendants' claims.

Although I expressed skepticism that the County would be able to meet its burden in light of the

silence of the Coates settlement agreement on the allocation issue, I found that the record then

before me did not permit the conclusion that the County would necessarily fail to meet its

burden. In addition, I expressed a degree of concern over the reasonableness of the County's

actions in negotiating a global settlement of the Coates claims before notifying its insurer of the

possibility that the state-law indemnification obligation might be at issue.[1]

On December 14, 2009, Judge Brown adopted my Findings and Recommendation

without modification. Following Judge Brown's order, the only remaining unresolved legal

issues raised by the County's action were: (i) whether any portion in excess of $300,000 of the

global Coates settlement was allocated to the individual County employee defendants' claims;

and (ii) if so, whether the County settled the Coates claims against the County employee

---

[1] As noted above, the County negotiated a tentative global settlement of all of Coates'
Section 1983 claims prior to notifying Midwest Employers of the possibility that a state-law
indemnification obligation might be at issue, although it provided such notification before the
global settlement agreement was accepted by the County Board of Commissioners.

Page 10 - OPINION AND ORDER

defendants in good faith and for a reasonable amount.

On January 15, 2010, the parties consented to magistrate jurisdiction. On January 25, 2010, I set a pretrial conference for September 7, 2010. At the pretrial conference, trial was stricken from the docket, and a briefing schedule was established for a dispositive motion to be filed by Midwest Employers. Pursuant to the court-imposed schedule, Midwest Employers' motion was due on September 28, 2010, the County's opposition was due on November 5, 2010, and Midwest Employers' reply, if any, was due on November 29, 2010.

On September 28, 2010, Midwest Employers timely moved for summary judgment on the grounds that the County could not meet its burden to establish the existence of a material fact as to whether any portion of the global Coates settlement had been allocated to the individual County employee defendants' claims. Oral argument in connection with Midwest Employers' motion was scheduled for Tuesday, December 7, 2010.

On November 6, 2010, one day after its opposition was due, the County opposed Midwest Employer's motion, without offering new evidence into the record in support of its legal positions and without responding to Midwest Employers' concise statement of material facts. Midwest Employers filed a reply memorandum in support of its motion on Monday, November 29, 2010, in which it expressly noted the County's failure to offer evidence in support of its opposition. Subsequently, on the afternoon of Friday, December 3, 2010 – just two business days before oral argument was scheduled to take place on Midwest Employer's motion – the County filed the declaration of Robert Wagner in support of its opposition to Midwest Employer's summary judgment motion. The County simultaneously offered the declaration of its new lead counsel, Kathleen Rastetter, who testified that the County's failure to file the Wagner declaration

Page 11 - OPINION AND ORDER

contemporaneously with its opposition papers had been caused by inadvertent error. The

Rastetter declaration also included as an exhibit a page from Midwest Employer's claim notes

generated in connection with the Coates Section 1983 action and dated December 15, 2004, upon

which the County apparently intended to rely in opposing Midwest Employers' dispositive

motion.

On December 6, 2010, on the eve of oral argument, Midwest Employers moved to strike

the late-filed Wagner and Rastetter declarations. Oral argument on both the summary judgment

motion and the motion to strike took place December 7, 2010.

**ANALYSIS**

Where, as here, a district court's jurisdiction is premised on the diversity of the parties'

citizenship, the court applies federal procedural and state substantive law in resolving the parties'

claims. *See, e.g., Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008);

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

**I.    Motion to Strike**

Midwest Employers' moves to strike the Wagner declaration and Rastetter declaration,

which were filed by the County on December 3, 2010, two business days before oral argument on

Midwest Employers' motion for summary judgment, rather than contemporaneously with the

summary judgment opposition brief the declarations were intended to support, which itself was

untimely filed on November 6, 2010. It is not in dispute that the declarations were untimely filed

both with respect to the court's September 7, 2010, scheduling order and under Federal Civil

Procedure Rule 6, which provides, in relevant part, that affidavits in support of a party's

opposition to a motion must be filed not later than seven days in advance of any hearing on the

Page 12 - OPINION AND ORDER

motion to be opposed, *see* Fed. R. Civ. P. 6(c)(2).

Extension of the time within which a document must be filed is governed by Federal

Civil Procedure Rule 6(b). Rule 6(b) provides, in relevant part, as follows:

> When an act may or must be done within a specified time, the court may, for good
> cause, extend the time:
>
> > (A) with or without motion or notice if the court acts, or if a request is
> > made, before the original time or its extension expires; or
> >
> > (B) on motion made after the time has expired if the party failed to act
> > because of excusable neglect.

Fed. R. Civ. P. 6(b)(1). Thus, where – as here – a party seeks to file a declaration in support of

an opposition after the time for doing so has passed, that party is required as a matter of

procedural law to file a motion for leave to do so and to make a showing that its failure to file the

declaration in timely fashion was the result of excusable neglect. If the court then determines

that there is good cause to permit the late filing, the court may extend the filing deadline

accordingly.

Here, the County filed its untimely declarations without first moving for leave to do so.

Even if I construe the County's filings as implicitly constituting a motion for leave to file the

Wagner and Rastetter declarations late, however, the County cannot meet its burden to show that

good cause exists for retroactive extension of the filing deadline.

The United States Supreme Court has specified that:

> [T]he determination [of what sorts of neglect will be considered "excusable"] is at
> bottom an equitable one, taking account of all relevant circumstances surrounding
> the party's omission. These include. . . the danger of prejudice to the [nonmoving
> party], the length of the delay and its potential impact on judicial proceedings, the
> reason for the delay, including whether it was within the reasonable control of the
> movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). The *Pioneer* court

further specified that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the

rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a

somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances

beyond the control of the movant." *Id.* at 392 (footnotes omitted). In applying the *Pioneer* test,

the Ninth Circuit – unlike "at least six" of its sister circuits, *Pincay v. Andrews*, 389 F.3d 853,

863 (9th Cir. 2004) (Kozinski, *dissenting*) – has held that the factors set forth in *Pioneer* must be

balanced against one another, that no single factor standing alone should be treated as having

necessarily dispositive significance, and that there can be no rigid *per se* rule under which any

specific reason for a party's neglect may be treated as necessarily inexcusable. *See id.* at 859-860.

The first *Pioneer* factor, the danger of prejudice to the nonmoving party, mitigates at least

to a limited degree against finding the County's neglect excusable. The County did not file its

declarations – and therefore did not offer into the record the only arguably material evidence in

support of its opposition to Midwest Employers' dispositive motion – until after Midwest

Employers had filed its reply memorandum in support of its motion and, indeed, until after

counsel for Midwest Employers had completed some or all of its preparation for oral argument

on the motion. It would be clearly prejudicial to Midwest Employers to construe the Wagner and

Rastetter declarations as timely filed and to decide Midwest Employers' motion without first

permitting Midwest Employers the opportunity to respond to the late-filed evidence. While such

prejudice could probably be cured, *i.e.*, by granting Midwest Employers leave to file an amended

reply memorandum, reconvening oral argument, and shifting Midwest Employers' attorney fees

thereby incurred to the County, the fact that excusing the County's delay would be facially

prejudicial to Midwest Employers mitigates against extending the filing deadline.

The second *Pioneer* factor, the reason for the delay, mitigates strongly against finding the County's neglect excusable. The County's unexplained inadvertence in failing to file the Wagner declaration, which bears an execution date of November 4, 2010, is simply not a compelling reason for excusing its delay. Moreover, the County offers no explanation, not even one as uncompelling as inadvertent neglect, for its untimeliness in offering into evidence the December 15, 2004, claims notes attached to the Rastetter declaration.

The third *Pioneer* factor, the length of the delay and its impact on these proceedings, likewise mitigates against finding the County's neglect excusable. The County did not seek to file the declarations until four weeks after the deadline for doing so had passed. To cure the prejudicial effects of the delay would require, at minimum, that Midwest Employers be permitted an opportunity to respond to the late-filed evidence and that oral argument on Midwest Employers' dispositive motion be reconvened. The County's neglect does not present a case of error caught quickly and corrected before any problems developed in consequence, but rather of error left uncorrected until after its foreseeable adverse consequences had been realized.

By contrast, the fourth *Pioneer* factor, the neglectful party's good faith, mitigates in favor of finding the County's neglect excusable. There is no evidence that the County's failure to offer its evidence in timely fashion was motivated by tactical considerations or otherwise by bad faith.

I take note that the County's dilatoriness in offering the evidence upon which it hopes to rely in opposing Midwest Employers' motion is not the County's first instance of failing to adhere to appropriate standards of diligence in the course of these proceedings. At the conference of September 7, 2010, counsel for the County specifically requested that the deadline for the

Page 15 - OPINION AND ORDER

County's opposition be set for November 5, 2010 – effectively a preemptive extension of the time that would normally be allowed for the preparation of an opposition memorandum – but nevertheless the County failed to file its opposition until the following day, November 6, 2010. Earlier in these proceedings, the County failed to file its reply memorandum and related declarations and other evidence in support of its own motion for summary judgment until September 14, 2009, whereas the deadline for filing those materials had been set by court order to September 11, 2009. The County's history of dilatory behavior impacts the equitable determination whether the County's neglect was excusable in this instance.

Taking account of all the relevant circumstances, I find that the County's neglect was not excusable for purposes of Rule 6(b)(1)(B). Although the neglect was caused by presumptively unfeigned inadvertence and carelessness rather than motivated by tactical considerations, the County's delay was relatively long, at least potentially prejudicial to Midwest Employers, and impacts the course of these proceedings nontrivially. Moreover, the County's neglect is not an isolated instance of dilatory conduct, but rather is consistent with a significant history of similar failures of timeliness.

In consequence, the Wagner declaration and Rastetter declaration filed December 3, 2010, are procedural nonentities upon which the County may not properly rely in opposing Midwest Employers' dispositive motion. Because it is appropriate to sanction the procedural impropriety of the County's late filings by striking the untimely filed declarations, Midwest Employers' motion to strike is granted, and the Wagner declaration and Rastetter declaration are stricken from the docket.

## II.    Motion for Summary Judgment

Under Oregon law, it is the insured's burden to establish that it has incurred a covered

loss under a policy of insurance. *See Lewis v. Aetna Ins. Co.*, 264 Or. 314, 316 (1973).[2] Here, it

is the County's position that its payment to Coates in settlement of Coates' Section 1983 claims

constitutes damages imposed upon it by operation of Oregon law, and therefore a loss within the

scope of the insurance coverage provided under the Policy.  In taking this position – and in

acknowledgment of the court's ruling that damages imposed pursuant to Section 1983 are

damages imposed under federal law – the County now relies in part on Oregon statutory law

requiring the governing body of any public entity to "defend, save harmless and indemnify any of

its officers, employees and agents, whether elective or appointive, against any tort claim or

demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in

the performance of duty," Or. Rev. Stat. 30.285(1).  The County argues that its payment to

Coates was tendered in settlement of Coates' claims against the individual County employee

defendants, and therefore effectively constituted payment in satisfaction of its state-law

indemnification obligation to those employee defendants.  However, the County has failed to

offer into the record evidence from which a finder of fact could reasonably conclude that the

County's position is correct.

Critical to the analysis of whether any portion of the County's payment to Coates

constituted a *de facto* (or *de jure*) obligatory indemnity payment to the County employee

defendants is a close parsing of the conduct of the parties at and around the time the Coates

---

[2] It is likewise the plaintiff's burden under Oregon law to establish a non-speculative
basis for an award of damages in a breach of contract action. *See, e.g., Davis v. Wilson*, 261 Or.
137, 147 (1972); *Bennett Veneer Factors, Inc. v. Tomco, Inc.*, 256 Or. 547, 551 (1970).

settlement agreement was reached. The parties to the Coates action reached a tentative

settlement following discussions on September 15, 2005, without Midwest Employers'

participation. Counsel for the County called a Midwest Employers representative from the

settlement negotiations to advise the insurer that the County would seek indemnity on the

grounds that damages imposed under Section 1983 constitute damages imposed under state law,

but did not at that time place Midwest Employers on notice of any possible indemnification

obligation the County might owe to its employee co-defendants in consequence of the

contemplated settlement. It was not until five days later, on September 20, 2005, that the County

first advised Midwest Employers of its statutory obligation to indemnify the County employee

defendants for losses they suffered in connection with Coates' claims. By not later than

September 20, 2005, therefore, both Midwest Employers and Clackamas County were aware of

the possibility that the Policy might provide coverage in connection with the County's statutory

obligation to indemnify its employees and agents.

On September 27, 2005, Midwest Employers declined to approve or disapprove the

Coates settlement, and reaffirmed its previous decision that the Policy provided no coverage in

connection with Coates' claims. In so doing, Midwest Employers took a clear risk: namely, that

the Coates parties would agree, without Midwest Employers' involvement, to a larger allocation

of the Coates settlement payment to the claims against the County employee defendants than

would have occurred had the insurer injected itself into the negotiations. However, despite the

demonstrated knowledge of the County and its counsel of the possibility that the County's

statutory indemnity obligation might provide a basis for coverage under the Policy, the County

did not require or request any allocation of its global settlement payment to the employee

Page 18 - OPINION AND ORDER

defendants' claims.  On November 10, 2010, the County's representative signed the Coates

settlement agreement, no allocation having been made or discussed among the Coates parties.

The problem with the position now espoused by the County is that, under the Policy,

Midwest Employers owed the County no duty in direct connection with Coates' federal claims

against the County and its employees.  To the contrary, even on the County's current theory

Midwest Employers' duties under the employers' liability section of the Policy would have arisen

only to the extent some portion of the County's payment to Coates could properly have been

characterized as tendered in satisfaction of the County's obligations to its employees under

Section 30.285.  Had the parties to the Coates settlement agreement expressly allocated some or

all of the County's settlement payment specifically to the claims against the County employee

defendants, it would, perhaps, have been an empty formalism to require that one or more of the

employee defendants make a formal claim for indemnity against the County before construing

the County's payment in satisfaction of the claims against the individual defendants as damages

imposed pursuant to Section 30.285.  However, in the absence of any indication that the parties

to the Coates settlement agreement made any express allocation of the global settlement

payment, there is simply no basis for concluding that even a theoretical obligation could have

arisen between the County and its employee co-defendants under Section 30.285.

The County offers no evidence, and does not assert, that any allocation of the global

settlement payment to the claims against the County employee defendants was

contemporaneously effected, contemplated, discussed, or even proposed.  Instead, the undisputed

evidence is that the Coates parties agreed to a global settlement, satisfaction of which was

undertaken by the County, without contribution from its co-defendants.  Under these

Page 19 - OPINION AND ORDER

circumstances, the provisions of Section 30.285 were not triggered by the County's payment to
Coates, the County incurred no obligation to indemnify its employee co-defendants, and no
portion of the payment can properly be characterized as damages imposed on the County under
state law.  In consequence, the Policy did not provide coverage in connection with the County's
payment to Coates, and Midwest Employers did not breach its contract with the County by
failing to indemnify the County for any portion of the Coates settlement payment.

I note that I would reach this same conclusion if I were to consider the Wagner and
Rastetter declarations.  Wagner, who represented the County as its outside counsel in connection
with Coates' Section 1983 claims, does not purport to testify that any allocation of the global
settlement took place, but rather opines that it would have been reasonable to allocate the entirety
of the payment to the claims against the County employee defendants, because the claims against
the County were without either merit or settlement value.  While Wagner's declared opinion is
strikingly inconsistent with the assessment of Cotes' claims provided by County counsel to the
County Board of Commissioners on September 30, 2005, in which counsel did not indicate any
relative weakness of the claims against the County but rather opined that the proposed settlement
was advisable due to the effectively uncapped potential liability the County might face in
connection with Coates' claims for pain and suffering damages and punitive damages, even taken
at face value his opinion does nothing to change the fundamental fact that no contemporaneous
allocation of the global settlement payment was effected or contemplated.  Similarly, the
evidence offered as an exhibit to the Rastetter declaration establishes only that Midwest
Employers was aware of Coates' Section 1983 claims by as early as December 15, 2004, a fact
not in dispute.

Page 20 - OPINION AND ORDER

Against the conclusion that the Policy did not provide coverage in connection with the County's payment to Coates, the County argues that Midwest Employers waived its right to challenge the County's retroactive allocation of 100% of the settlement payment to the claims against the County employee defendants when it refused to approve or disapprove the tentative settlement after being given an opportunity to do so on September 20, 2005. Under Oregon law, "adults with the capacity to do so generally are free to waive a panoply of rights, statutory and constitutional, so long as the waiver is knowing and intentional." *McInnis & McInnis*, 199 Or. App. 223, 236 (Or. Ct. App. 2005) (citations omitted). "A contractual waiver requires the intentional relinquishment of a known right, manifested in an unequivocal manner." *McMillan v. Follansbee*, 194 Or. App. 145, 153 (Or. Ct. App. 2004). Here, because there is no evidence to suggest that Midwest Employers was aware at the time it refused to approve or disapprove the tentative settlement that the County would later assert a retroactive allocation of its global settlement payment, and because Midwest Employers' decision not to participate in settlement negotiations did not unequivocally indicate Midwest Employers intention not to challenge any such retroactive allocation, the doctrine of waiver is inapplicable.

In its opposition to Midwest Employers' dispositive motion, the County also raises, for the first time in these proceedings, an additional, novel argument, namely, that even if Midwest Employers was under no obligation to indemnify the County for any portion of its payment to Coates, the Policy nevertheless provides coverage for the County's costs in providing legal representation to the County employee defendants in the Section 1983 action. The question whether Midwest Employers is required to indemnify the County under the Policy for the attorney fees the County incurred on behalf of the County employee defendants in the Coates

Page 21 - OPINION AND ORDER

action is not before the court; the County's complaint sets forth neither the factual nor the legal

underpinnings of any such claim for relief, and does not pray for any such damages. I therefore

need not and do not reach this argument, although I note that, if it were before the court on the

evidentiary record the parties have created, it would necessarily fail on its merits due to the

absence of any evidence that the County satisfied its obligation under the Policy to notify

Midwest Employers in timely fashion of a state-law duty to provide for its employees' legal

defense

Because the Policy did not provide coverage in connection with the County's payment to

Coates, and because Midwest Employers did not breach its contract with the County by failing to

indemnify the County for any portion of the Coates settlement payment, as a matter of law the

County is not entitled to relief on either of its claims. Midwest Employers' motion for summary

judgment is therefore granted.

## CONCLUSION

For the reasons set forth above, Midwest Employers' motion (#104) to strike is granted,

the Rastetter declaration (#102) and Wagner declaration (#103) are each stricken from the

docket, Midwest Employers' motion (#91) for summary judgment is granted, and the County's

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 22 - OPINION AND ORDER

claims are dismissed with prejudice.  All pending motions, if any, are denied as moot.  A final judgment will be prepared.

Dated this 22nd day of December, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge